UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE ALGER, COLUMBIA, JANUS, MFS, ONE GROUP, ALLIANZ DRESDNER AND PUTNAM | 04-MDL-15863 (Hon. J. Frederick Motz) |
| This Document Relates To: Fund Derivative Subtrack | Civil No. 05-JFM-0502 (D. Md.) |
| *Starr* v. *Van Kampen Investments, Inc., et al.* | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*Counsel for Defendants Morgan Stanley, Van Kampen Investments, Inc., Van Kampen Asset Management, Inc., Van Kampen Investor Services, Inc., Van Kampen Funds, Inc., Morgan Stanley Investment Advisors, Inc., Morgan Stanley Investments LP, Morgan Stanley Investment Management, Inc., Mitchell C. Merin and Richard F. Powers*

STROOCK & STROOCK & LAVAN
LLP

*Counsel for Defendants David C. Arch, J. Miles Branagan, Jerry D. Choate, Rod Dammeyer, Linda Hutton Heagy, R. Craig Kennedy, Howard J. Kerr, Jack E. Nelson, Hugo F. Sonnenschein, Suzanne H. Woolsey and Wayne W. Whalen*

Defendants Van Kampen Asset Management, Inc., Van Kampen Investor Services, Inc., Van Kampen Funds, Inc., Morgan Stanley Investment Advisors, Inc., Morgan Stanley Investments LP and Morgan Stanley Investment Management, Inc. (the "Van Kampen Defendants") and defendants David C. Arch, J. Miles Branagan, Jerry D. Choate, Rod Dammeyer, Linda Hutton Heagy, R. Craig Kennedy, Howard J. Kerr, Jack E. Nelson, Hugo F. Sonnenschein, Suzanne H. Woolsey, Mitchell C. Merin, Richard F. Powers and Wayne W. Whalen (the "Trustee Defendants")[1], Van Kampen Investments, Inc. and Morgan Stanley respectfully submit this memorandum of law in support of their motion for reconsideration of the application to Van Kampen of the Court's Section 36(b) and 48(a) rulings in the *Janus* subtrack.[2]

---

[1]   On March 15, the parties filed a Stipulation of Voluntary Dismissal and Tolling Agreement that dismisses David C. Arch, J. Miles Branagan, Jerry D. Choate, Rod Dammeyer, Linda Hutton Heagy, R. Craig Kennedy, Howard J. Kerr, Jack E. Nelson, Hugo F. Sonnenschein, Suzanne H. Woolsey and Wayne W. Whalen (the "Independent Trustees") from this action. If so-ordered by your Honor, the Stipulation of Voluntary Dismissal and the Tolling Agreement would render this motion for reconsideration moot with respect to the Independent Trustees. However, Trustees Mitchell C. Merin and Richard F. Powers have not been dismissed from this action and therefore remain parties to this motion for reconsideration. If plaintiff, pursuant to the terms of the Stipulation of Voluntary Dismissal and Tolling Agreement, elects to rename the Independent Trustees as defendants in this action, the Independent Trustees respectfully reserve the right to renew their motion to dismiss.

[2]   On August 25, 2005, the Court issued an Investor Class Opinion and a Fund Derivative Opinion in the *Janus* subtrack. In the Fund Derivative Opinion, the Court dismissed all claims save for plaintiffs' claims under Section 36(b) and Section 48(a) (to the extent related to Section 36(b)) of the Investment Company Act (the "ICA"). On November 3, 2005, the Court issued a one-page Opinion in the *Van Kampen* subtrack granting defendants' motion to dismiss with respect to all but those claims. The Court held that plaintiff has a cognizable claim under these claims for the reasons stated in the August 25, 2005 opinions issued in the *Janus* subtrack.

2

## ARGUMENT

In a November 3, 2005 letter to all parties, the Court invited motions for reconsideration of the application of the *Janus* rulings and stated that "any party who believes I have misapplied the rulings I made in the *Janus* subtrack to any particular claim or party in another subtrack may file a motion for reconsideration within thirty days."[3] Moreover, with respect to plaintiffs' Section 48(a) claims against defendants who have not been charged with a Section 36(b) violation, Your Honor said at the February 9, 2006 teleconference and reiterated in a February 27, 2006 Order in the *Putnam* Subtrack that "these issues are important and that the parties should proceed with supplemental briefing." *See* Order, *Zuber* v. *Putnam Investment Mgmt. LLC, et al.*, Civil No. JFM-04-0564 (D. Md. Feb. 27, 2006); *see also* Order, *McBride* v. *Allianz Dresdner Asset Mgmt. of America, et al.*, Civil No. JFM-04-1924 (D. Md. Feb. 28, 2006).

Reconsideration of the Court's November 3, 2005 Order applying to the Van Kampen Defendants the *Janus* Section 36(b) ruling is appropriate because the Complaint here does not allege that market timing or late trading occurred in the Van Kampen funds. Furthermore, plaintiff has failed to allege that he suffered any damages

---

[3] Motions for reconsideration of an interlocutory order, such as a grant or denial of a motion to dismiss, are governed by Federal Rule of Civil Procedure 54, which permits a district court to reconsider and revise such orders "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties." Fed. R. Civ. P. 54(b). Motions for reconsideration of interlocutory orders "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires." *Fayetteville Investors*, 936 F.2d at 1473; *see also Schoen* v. *Washington Post*, 246 F.2d 670, 673 (D.C. Cir. 1957) (Burger, J.) ("So long as the court has jurisdiction over an action, it should have complete power over interlocutory orders made therein and should be able to revise them when it is consonant with equity to do so.") (quoting *John Simmons Co.* v. *Grier Bros. Co.*, 258 U.S. 82 (1922)).

in the one-year period prior to the commencement of this action, as expressly required by Section 36(b).

Reconsideration of the Court's Order applying to the Van Kampen Trustees, Van Kampen Investments, Inc. and Morgan Stanley the *Janus* Section 48(a) ruling is also appropriate. First, plaintiff's Section 48(a) claim fails because the Complaint does not allege that these defendants "procured" a violation of Section 36(b). Second, Section 48(a) is only designed to prohibit a person from doing indirectly (through the procurement of the activity by another) something that the statute forbids them to do directly. Here, since it is undisputed that the Van Kampen Trustees, Van Kampen Investments, Inc. and Morgan Stanley were not recipients of the compensation or payments that are alleged to be excessive in violation of Section 36(b), they are not subject to Section 36(b) and cannot violate that provision. It follows that plaintiff cannot attack the same conduct indirectly by attempting to invoke Section 48(a) against the Trustees, Van Kampen Investments, Inc. or Morgan Stanley.

## A.  Plaintiff's Section 36(b) Claim Must be Dismissed for Failure to Allege that Market Timing or Late Trading Occurred in the Van Kampen Funds

In its August 25, 2005 opinions in the *Janus* subtrack, the Court declined to dismiss plaintiffs' claim under Section 36(b) of the Investment Company Act (the "ICA") and held that plaintiffs could assert a Section 36(b) claim for excessive fees and expenses resulting from the occurrence of market timing and late trading in the funds.[4]

---

[4]   Specifically, the Court held that plaintiffs "may assert a claim under Section 36(b) for excessive fees and expenses resulting from the defendants' scheme" and that "[s]uch a claim is supported by allegations in the complaint that (1) management fees, which were based upon the amount of funds under management, were increased excessively by late trades and market timed transactions that increased the funds under management, (2) the influx of funds from late trades and market timed transactions

The Van Kampen Defendants respectfully submit that the application to Van Kampen of this ruling is incorrect because plaintiff has not alleged any facts showing that market timing or late trading occurred in the Van Kampen funds. Thus, plaintiff has not alleged facts showing that market timing or late trading in the Van Kampen funds increased management or distribution fees, let alone that they did so excessively, or that "sticky assets" were placed in the Van Kampen funds resulting in unearned fees. Indeed, the Complaint does not even allege that Van Kampen offered, solicited or participated in any "sticky asset" arrangements from market timers in exchange for market timing privileges. (*Compare with Janus* Compl. ¶¶ 310, 323-327, 331, 346, 349, 367, 372-373, 379.)

The Janus defendants did not assert, for the purposes of either their fund derivative or investor class motions to dismiss, that market timing and late trading had not occurred in the Janus funds or that plaintiffs had not alleged facts showing that market timing and late trading had occurred in the Janus funds. As a result, the Court's opinions in the *Janus* subtrack began with the premise that market timing and late trading had occurred in those funds and addressed only whether, given that presumption, plaintiffs had asserted tenable legal theories on which a Section 36(b) claim could conceivably be sustained. The Court therefore had no occasion to address whether the *Janus* complaint had adequately alleged the occurrence of market timing or late trading in the Janus funds. The present case thus stands in stark contrast to *Janus*, for the Van Kampen Defendants did not accept, even for the purposes of their motion to dismiss the

---

excessively increased fees paid by funds for distribution of shares, and (3) the management fees paid as the result of the deposit of 'sticky assets' that would 'sit quietly, in low-risk money-market or government bond funds' were entirely unearned." (Investor Class Opinion at 27.)

fund derivative action (the only action in which they have been named), that market timing or late trading occurred in the Van Kampen funds. In fact, the primary thrust of the Van Kampen Defendants' motion to dismiss was that the Complaint had not alleged with respect to any fund that market timing or late trading had actually occurred. Notably, the Van Kampen funds, unlike the other fund complex defendants in this MDL proceeding, have never been charged by any regulator with any misconduct concerning market timing or late trading. Therefore, plaintiff cannot simply presume that market timing or late trading occurred in the Van Kampen funds. Moreover, plaintiff may not use this lawsuit as a fishing expedition. On a motion to dismiss, the Complaint must be evaluated on the pleadings alone, not on what information plaintiff hopes discovery will produce.

Recognizing that he has not pleaded facts showing that market timing or late trading occurred in the Van Kampen funds, plaintiff argues that the absence of regulatory proceedings warrants denial of our motion to dismiss: "At this stage of the litigation, because there have been no regulatory proceedings against the Van Kampen Fund Defendants, Plaintiff has had no discovery." (Opp. Br. at 2.) But the fact that there have been no regulatory proceedings against Van Kampen proves the opposite of what plaintiff is trying to show. It is a strong indicator that market timing and late trading did not in fact occur in the Van Kampen funds.

In our motion to dismiss, we explained in detail the ways in which the allegations in the Complaint fail to show that market timing and late trading occurred in the Van Kampen funds. (*See* Br. at 1-11; Reply Br. at 1-2.) In the interest of efficiency, we do not repeat here all of those arguments, but provide a pertinent summary.

The Complaint alleges generally that, in violation of Section 36(b), the Van Kampen advisers, transfer agent and distributor breached their fiduciary duties to the funds by "facilitating, permitting, or encouraging, participating in, or failing to detect and prevent, the acts alleged in this Complaint which were designed to increase deposits on the short term on which they would and did receive fees and other compensation which fees bore no reasonable relationship to services or benefits rendered to the Funds." (Compl. at ¶ 613)   Even under the theory accepted by the Court in *Janus*, these conclusory allegations do not assert a Section 36(b) claim, because plaintiff has not alleged facts showing that market timing or late trading occurred in the Van Kampen funds or that the funds' advisers, transfer agent or distributor were in any way complicit with those who engaged in market timing or late trading in the funds.   Indeed, the allegations of the Complaint show the opposite – that if market timing or late trading occurred in the Van Kampen funds, they occurred in spite of the detection and prevention mechanisms established and maintained by the Van Kampen Defendants and, in any event, that any market timing activity in the funds did not violate prospectus limits. Moreover, it does not even allege that market timing or late trading took place in the funds during the one-year period prior to the commencement of this litigation, the only year for which plaintiff may recover damages under Section 36(b).

As discussed in detail in our motion to dismiss (*see* Br. at 7-9), the Complaint provides literally no basis to infer that a material amount of market timing, relative to the size of the assets of a given fund, occurred in a particular fund in a given year.   Nor does plaintiff allege that *any* alleged timing activity by *any* investor in *any* year violated the prospectus limitations or restrictions of *any* fund. (*Compare with Janus*

Compl. ¶¶ 312, 331, 347, 404.) Plaintiff's allegations of late trading in the Van Kampen funds are even less particularized than those concerning market timing. No allegations indicate that the defendants knew about, let alone countenanced, late trading. (*See* Br. at ¶ 9.)

Plaintiff alleges in entirely conclusory terms that the Van Kampen fund advisers, transfer agent and distributor either failed to prevent market timing and late trading in the funds or affirmatively permitted market timing and late trading in the funds. (Compl. ¶ 9.) Revealingly, plaintiff's opposition brief averred only that the Van Kampen Defendants "overlooked market timing, or made at best only insincere attempts to stop it" – a considerably watered-down, though equally conclusory, set of allegations about defendants' alleged complicity in the so-called scheme.

However, even on the face of the Complaint, the allegations of misconduct by the Van Kampen Defendants are insufficient. The Complaint lacks any concrete – as opposed to conclusory – allegations that the Van Kampen Defendants were complicit with those who engaged in market timing or late trading activity. (*See* Br. at 10-11; *see also* Exhibit 6 to the Rosen Declaration.) To be specific:

- The Complaint does not allege that Van Kampen insiders timed their own funds.

- The Complaint does not allege that Van Kampen insiders negotiated or granted timing capacity. (*Compare with Janus* Compl. ¶¶ 308, 331, 334-336, 367, 369, 373.)

- The Complaint does not allege that Van Kampen senior management ignored complaints from employees about market timing in the funds, or reports concerning the adverse effects of market timing. (*Compare with Janus* Compl. ¶¶ 268-272, 276, 279-284, 301, 313, 350, 374-377.)

- The Complaint does not allege that Van Kampen insiders provided portfolio holdings information to any market timer for any purpose. (*Compare with Janus* Compl. ¶¶ 274, 352.)

- The Complaint does not allege that Van Kampen exempted timers from policies and procedures implemented to combat market timing. (*Compare with Janus* Compl. ¶¶ 284, 305, 307, 310, 312, 331, 347, 367.)

- The Complaint does not allege that Van Kampen management permitted or encouraged market timing or late trading. (*Compare with Janus* Compl. ¶¶ 265, 267, 304, 308, 310, 312, 403.)

Plaintiff concedes that the Van Kampen funds had policies and procedures in place to combat market timing and the Complaint does not allege, much less identify, any specific flaw in Van Kampen's policies and procedures. (*Id.* ¶¶ 131-134.) Even taking plaintiff's non-conclusory allegations to be true, the Van Kampen funds were victims of, not accomplices in, any market timing and late trading that occurred. The Complaint in fact acknowledges that market timers and late traders in the Van Kampen funds had to accomplish their goals through subterfuge and by using intermediaries who are not affiliated with Van Kampen. (*See* Compl. ¶ 60, 68, 91, 93; *see also* Br. at 5-7.)

As discussed above and in our motion to dismiss, the Complaint itself shows that if market timing or late trading activity occurred in the Van Kampen funds, it took place without the complicity of the Van Kampen advisers, transfer agent or distributor.

**B.      Plaintiff's Section 36(b) Claim Must be Dismissed for Failure to Allege Damages During the One-Year Period Prior to the Filing of the Complaint**

Plaintiff does not even allege that market timing or late trading occurred or that he suffered any damages in the one-year period prior to the filing of the Complaint, as required by the statute. In pertinent part, Section 36(b) provides that "[n]o award of damages shall be recoverable for any period prior to one year before the action was

instituted." 15 U.S.C. § 80a-35(b)(3).[5] Courts construing this language have found that, on its face, it limits recovery to damages incurred in the one-year period before an action is commenced, precluding the recovery of excessive fees paid while the action is pending. *See Green* v. *Nuveen Advisory Corp.*, 295 F.3d 738, 743 (7th Cir. 2002) ("[D]amages are recoverable only for the one-year period before the filing of the action."); *Kahn* v. *Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1037-38 (2d Cir. 1992) ("There is no express time limit on bringing an action under § 36(b), but the plaintiff may collect only those damages that have accrued in the prior year."). Accordingly, plaintiff's Section 36(b) damages here are limited to the one-year period prior to the filing of this action.

Yet, the Complaint (filed on February 22, 2005) is devoid of *any* allegations that plaintiff's alleged damages accrued in the one-year period prior to the commencement of this action. (*See* Compl. ¶¶ 110-130, 264-66.) In fact, the Complaint alleges that Prudential Securities engaged in market timing and late trading of Van Kampen Funds only "through July 2003." (*Id.* ¶ 129.) Accordingly, because there are no other allegations – not even conclusory allegations, unsupported by facts – that plaintiff suffered any Section 36(b) damages in the one-year period prior to the filing of the Complaint, the claim must be dismissed.

---

[5]   By so limiting the availability of damages, Congress "struck a careful balance between the interest in enabling shareholders to police investment advisory fees and the interest in minimizing nuisance litigation." *Krinsk* v. *Fund Asset Mgmt., Inc.*, No. 85 Civ. 8428 (JMW), 1986 WL 205, at *4 (S.D.N.Y. May 9, 1986). Permitting the recovery of additional damages "would effectively tend to alter this balance and subvert Congressional purpose, since any expansion of the time period for which a plaintiff may recover necessarily increases the cost of defending a suit and thereby increases the likelihood of strike suits." *Id.*

Recognizing this fatal deficiency, plaintiff argued, in his opposition to the motion to dismiss, that his Section 36(b) claim here relates back to the pleadings in the derivative action he filed against the Van Kampen defendants in the Northern District of Illinois and subsequently transferred to the Southern District of New York (the "SDNY action").[6] (*See* Opp. Br. at 7-8.) As discussed in defendants' reply brief, however, this argument has no merit. The SDNY action, and the Section 36(b) claim asserted therein, are based solely on allegations relating to "a plan and scheme operated by Defendants in connection with the offer and sale of the Van Kampen Funds to investors by the Funds' affiliated broker-dealer, MSDW." Plaintiff alleges there that "14 fund complexes, including the Van Kampen Funds, paid additional compensation through 'co-operative' programs operated by MSDW." Neither the original complaint nor the amended complaint in the SDNY action contains *any* allegations of market timing or late trading.

In fact, plaintiff has acknowledged that he did not even seek to allege facts relating to market timing or late trading in the SDNY action until December 23, 2004, when he filed a motion for leave to file a Second Amended Complaint there. (Opp. Br. at 7 n.5.) After defendants filed their opposition to that motion – arguing, among other things, that the market timing and late trading allegations alleged new facts that did not relate back to the earlier pleadings – plaintiff entered into a stipulation, agreeing that the allegations "should be filed in a separate complaint in a new action" in this Court in coordination with MDL 1586. Moreover, in a confirmatory letter jointly signed by the parties on February 15, 2005, plaintiff agreed *"that for purposes of the statute of*

---

[6]   Plaintiff filed his original complaint in the Northern District of Illinois on February 20, 2004; after the case was transferred to the Southern District of New York on April 26, 2004, he filed his First Amended Complaint on October 8, 2004.

*limitations, the action in MDL 1586 will be deemed to have been filed as of December 23, 2004*." (Emphasis added).

This action's Section 36(b) claim cannot relate back to the SDNY action's Section 36(b) claim because the claims are based on entirely different conduct. The caselaw is clear that where, as here, a claim relies on a new set of operative facts, it is not part of the same cause of action for purposes of the relation back doctrine, even if it proceeds on the same legal theory. *In re Am. Express Co. Sec. Litig.*, 02 Civ. 5533 (WHP), 2004 WL 632750, at *7 (S.D.N.Y. Mar. 31, 2004) ("While the Amended Complaint asserts claims under the same statutes as the initial pleading . . . *it alleges different facts*.") (emphasis added); *accord English Boiler & Tube, Inc.* v. *W.C. Rouse & Son, Inc.*, No. 97-2397, 1999 WL 89125, at *3 (4th Cir. Feb. 23, 1999) (finding that plaintiff sought to assert claim "arising from facts other than those originally pleaded," and, thus, claim did "not relate back to the original filing date") (internal quotations omitted); *Saud* v. *Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991) ("[I]t is the *facts* surrounding the transaction or occurrence which operate to constitute the cause of action, *not the legal theory upon which a litigant relies*.") (emphasis added); *Brever* v. *Federated Equity Mgmt. Co.*, 2:04cv855 (DSC), slip op. at 8-9 (W.D. Pa. Nov. 7, 2005) (holding that relation back doctrine does not permit plaintiff to amend § 36(b) claim to include "different transactions and occurrences than those challenged by [initial] complaint").[7]

---

[7] Furthermore, Fed. R. Civ. P. 15(c) expressly provides that the relation back doctrine applies to "[a]n amendment of a pleading." Thus, the doctrine cannot even be invoked here, where plaintiff is filing a new complaint, in a separate action, in a different courthouse. *See Carter* v. *Texas Dep't of Health*, No. 04-50315, 2004 WL

Because this action's Section 36(b) claim does not relate back to the filing of either complaint in the SDNY action, recovery under the claim is limited to actual damages accrued in the one-year period prior to December 23, 2004. Accordingly, even if plaintiff's Section 36(b) claim could be predicated on allegations of market timing and late trading, it must be dismissed because it fails to allege any damages during the one-year period prior to December 23, 2004. (*See* Compl. ¶¶ 110-130, 264-66.)

**C.    Plaintiff's Section 48(a) Claim Against the Trustees, Van Kampen Investments, Inc. and Morgan Stanley Must be Dismissed**

If the Court does not, upon reconsideration, dismiss the Section 36(b) claim against the Van Kampen Defendants,[8] we respectfully request that the Court reconsider the application to the Van Kampen Trustees, Van Kampen Investments, Inc. and Morgan Stanley of the *Janus* Section 48(a) ruling. In *Janus*, the Court denied the motion to dismiss the Section 48(a) claim without prejudice[9] to the extent it relates to the Section 36(b) claim.

---

2722738, at *3 (5th Cir. Nov. 22, 2004) (collecting appellate decisions that hold that "15(c) pertains only to pleadings within the same case").

[8]   Dismissal of the Section 36(b) claim would require dismissal of the Section 48(a) claim because Section 48(a) does not provide an independent basis for liability, but imposes liability only where there is a primary violation of another section of the ICA. *See* 15 U.S.C. § 80a-47(a); *see also Forsythe* v. *Sun Life Fin., Inc.*, No. CIV. A. 04-10584-GAO, 2006 WL 148935, at *2 n.9 (D. Mass. Jan. 19, 2006).

[9]   In the Investor Class Opinion, the Court deferred ruling on the following arguments made by defendants: (1) there is no private right of action under Section 48(a); (2) under Section 36(b), suit may be brought only against the recipient of the compensation and payments challenged in a Section 36(b) claim; and (3) there are insufficient allegations to show that any defendant named in the Section 48(a) claim "procured" the alleged excessive fees. (Investor Class Opinion at 26-27, 32 n.28.) However, during a conference call with the parties on February 9, 2006, the Court explained that the motions to dismiss the Section 48(a) claims were denied in both the

We respectfully submit that the application of this ruling to the Van Kampen Trustees, Van Kampen Investments, Inc. and Morgan Stanley is inappropriate because the facts as pleaded in the Van Kampen Complaint do not allege that these parties "procured" a violation of Section 36(b). Section 48(a) is called "Procurement" and provides that "[i]t is unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder." *See* 15 U.S.C. § 80a-47. The Complaint here does not allege that the Trustees, Van Kampen Investments, Inc. or Morgan Stanley did anything to "procure" any other defendant to take steps to offer or solicit any "sticky asset" arrangements, or to enter into written or oral agreements with market timers, let alone that they "procured" the receipt of excessive compensation or payments under Section 36(b). Instead, the Complaint alleges only that the Trustees failed to take sufficient affirmative steps to prevent market timing, that is, that they "either have failed to take action, despite their knowledge" or "failed to put in place the proper supervision and control mechanisms that would have brought the existence of such unlawful practices in the Funds to their attention." (Compl. at ¶ 502(g).) Even if these allegations were true (which they are not), they do not show that the Trustees, Van Kampen Investments, Inc. or Morgan Stanley "procured" any violation of Section 36(b). Plaintiff's Section 48(a) claim against the Trustees, Van Kampen Investments, Inc. and Morgan Stanley should therefore be dismissed with prejudice.

---

Investor Class and Fund Derivative actions, "without prejudice" and "reserving the right to renew them later." (*See* Feb. 9, 2006 Tr. at 13-14.)

The application to the Trustees, Van Kampen Investments, Inc. and Morgan Stanley of the *Janus* Section 48(a) ruling is also inappropriate here because Section 48(a), by its express language, only prohibits a person from directly or indirectly obtaining the agreement of another person to commit an act that would be unlawful under the ICA for the procuring person himself to commit. *See, e.g., SEC* v. *M. Wesley Groshans & Brokers Cap. Mgmt., Inc.*, 47 S.E.C. Docket 712, Litig. Release No. 12,677, 1990 WL 322073, at *2 (Oct. 19, 1990); *Axe-Houghton*, SEC No-Action Letter, 1973 WL 11345, at *2 (Dec. 16, 1973). Inasmuch as the Trustees, Van Kampen Investments, Inc. and Morgan Stanley were not the "recipient[s] of the compensation or payments" alleged to be excessive in violation of Section 36(b), they could not be charged with a direct violation of that provision of the statute. Since Section 48(a) only prohibits someone from doing indirectly something that would violate the law if they did it directly, it follows that the Trustees, Van Kampen Investments, Inc. and Morgan Stanley cannot be charged with a Section 48(a) violation that is predicated on an underlying 36(b) claim.[10]

_____

[10] Finally, since the parties briefed the motions to dismiss the Investor Class and Fund Derivative actions, new cases have held that there is no private right of action under Section 48(a) of the ICA. *See Forsythe* v. *Sun Life Fin., Inc.*, No. CIV. A. 04-10584-GAO, 2006 WL 148935, at *2 (D. Mass. Jan. 19, 2006); *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 WL 126772, at *5 n.8 (S.D.N.Y. Jan. 17, 2006); *Waldock* v. *M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 3542527, at *9 (N.D. Ill. Dec. 27, 2005); *In re Davis Selected Mutual Funds Litig.*, No. 04 Civ. 4186 (MGC), 2005 WL 2509732, at *2 (S.D.N.Y. Oct. 11, 2005); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 232-233, *aff'd upon reconsideration*, 403 F. Supp. 2d 310, 313 (S.D.N.Y. 2005). Plaintiff's Section 48(a) claim should also be dismissed for this reason.

## CONCLUSION

For the foregoing reasons, the Van Kampen Defendants respectfully request that the Court reconsider the application to the Van Kampen Defendants of the *Janus* Section 36(b) ruling and the application to the Van Kampen Trustees, Van Kampen Investments, Inc. and Morgan Stanley of the *Janus* Section 48(a) ruling.

Dated: New York, New York
        March 15, 2006

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:_____
        Richard A. Rosen
        1285 Avenue of the Americas
        New York, NY 10019-6064
        (212) 373-3000

*Counsel for Defendants Morgan Stanley, Van
Kampen Investments, Inc., Van Kampen Asset
Management, Inc., Van Kampen Investor
Services, Inc., Van Kampen Funds, Inc.,
Morgan Stanley Investment Advisors, Inc.,
Morgan Stanley Investments LP, Morgan
Stanley Investment Management, Inc., Mitchell
C. Merin and Richard F. Powers*

**STROOCK & STROOCK & LAVAN LLP**

By:_____
        Bruce H. Schneider
        180 Maiden Lane
        New York, NY 10038-4982
        (212) 806-5400

*Counsel for Defendants David C. Arch, J. Miles
Branagan, Jerry D. Choate, Rod Dammeyer,
Linda Hutton Heagy, R. Craig Kennedy,
Howard J. Kerr, Jack E. Nelson, Hugo F.
Sonnenschein, Suzanne H. Woolsey and Wayne
W. Whalen*

16

**CONCLUSION**

For the foregoing reasons, the Van Kampen Defendants respectfully request that the Court reconsider the application to the Van Kampen Defendants of the *Janus* Section 36(b) ruling and the application to the Van Kampen Trustees, Van Kampen Investments, Inc. and Morgan Stanley of the *Janus* Section 48(a) ruling.

Dated: New York, New York
      March 15, 2006

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:_____
    Richard A. Rosen
    1285 Avenue of the Americas
    New York, NY 10019-6064
    (212) 373-3000

*Counsel for Defendants Morgan Stanley, Van Kampen Investments, Inc., Van Kampen Asset Management, Inc., Van Kampen Investor Services, Inc., Van Kampen Funds, Inc., Morgan Stanley Investment Advisors, Inc., Morgan Stanley Investments LP, Morgan Stanley Investment Management, Inc., Mitchell C. Merin and Richard F. Powers*

**STROOCK & STROOCK & LAVAN LLP**

By:_____
    Bruce H. Schneider
    180 Maiden Lane
    New York, NY 10038-4982
    (212) 806-5400

*Counsel for Defendants David C. Arch, J. Miles Branagan, Jerry D. Choate, Rod Dammeyer, Linda Hutton Heagy, R. Craig Kennedy, Howard J. Kerr, Jack E. Nelson, Hugo F. Sonnenschein, Suzanne H. Woolsey and Wayne W. Whalen*

16